# THOMAS F. BALLWEG

v.

# CROWDER CONTRACTING COMPANY, ET AL.

Record No. 930499

February 25, 1994

Present: All the Justices

*Lee Boothby (G. Michael Price; Boothby & Yingst; Connor, Pennington and Price,* on briefs), for appellant.

*Jimese L. Pendergraft (William L. Dudley, Jr.; Knight, Dudley, Dezern & Clarke,* on brief), for appellees.

JUSTICE STEPHENSON delivered the opinion of the Court.

This appeal presents a conflict between a state's right to administer its workers' compensation act and an individual's constitutional right to free exercise of religion.

## I

Thomas F. Ballweg appeals from a judgment of the Court of Appeals, affirming a decision of the Workers' Compensation Commission (the Commission) and holding that he is not entitled to receive further payments of workers' compensation benefits. Ballweg had refused selective employment made available to him by his employer, Crowder Contracting Company (Crowder), because the selective employment required him to work on Saturdays, in contravention of a basic precept of his religion. Ballweg contends that the decision violates his First Amendment right to free exercise of religion.[1] We awarded Ballweg an appeal because the case involves a substantial constitutional question as a determinative issue. Code § 17-116.07.

## II

The relevant facts are essentially undisputed. Ballweg has been an active member of the Seventh-day Adventist Church since 1982. Seventh-day Adventists observe the Biblical Sabbath and, therefore, are prohibited from working from sundown Friday to sundown Saturday. Crowder concedes that Ballweg's religious beliefs are sincere and that the prohibition against Saturday work is a basic tenet of the Seventh-day Adventist creed.

In April 1988, Crowder employed Ballweg as a carpentry foreman with the understanding that Ballweg could not and would not work on Saturdays because of his religious beliefs. From the time Ballweg joined the church, he never has worked on Saturdays. However, he has worked and will work on Sundays.

In June 1989, Ballweg sustained a job-related knee injury for which he was awarded workers' compensation benefits for intermittent periods of work incapacity through March 14, 1991. Ballweg continued to have problems with his knee and, on the advice of his treating physician, terminated his position with Crowder on March 30, 1991.

---

[1] The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." The First Amendment was made applicable to the States by the Fourteenth Amendment. *Cantwell* v. *Connecticut,* 310 U.S. 296, 303 (1940).

Crowder, with the assistance of a rehabilitation specialist, had been seeking alternative employment for Ballweg since January 1991. As a result of Crowder's efforts, a company named Multra Guard Corporation offered Ballweg a position as a security guard. Had Ballweg accepted the job offer, he would have commenced work the following day, a Saturday, and he would have been required to work approximately seven of every eight Saturdays. Although Ballweg was physically capable of performing the work, he refused the position because of his religious beliefs. Thereafter, Ballweg unsuccessfully searched for other suitable employment, and Crowder terminated his workers' compensation benefits.

Ballweg then applied to the Commission for reinstatement of benefits, and Crowder defended on the ground that Ballweg unjustifiably had refused selective employment.[2] Following a hearing, the deputy commissioner ruled that Ballweg was justified in refusing the employment and reinstated Ballweg's benefits. The deputy commissioner concluded that a finding of unjustified refusal would violate Ballweg's constitutional rights under the First Amendment. Crowder appealed the ruling to the full Commission which reversed the deputy commissioner's award, finding that Ballweg unjustifiably refused the selective employment. Ballweg appealed, and the Court of Appeals affirmed the Commission's decision. *Ballweg* v. *Crowder Contracting Co.,* 16 Va. App. 31, 427 S.E.2d 731 (1993).

### III

The Court of Appeals ruled that Ballweg failed to meet the burden of persuasion required by Code § 65.2-510 because "[t]he excuse [he] used . . . is independent of the industrial accident." *Ballweg,* 16 Va. App. at 35, 427 S.E.2d at 733. Ballweg contends that he did not have the burden of persuasion and that, in any event, his refusal of the proffered employment was justified. Crowder counters that Ballweg failed to show that his refusal of selective employment was causally related to his work injury and that such a showing was necessary to justify the refusal. Crowder asserts that the record shows only that Ballweg refused employment for private and personal beliefs.

---

[2] Code § 65.2-510 provides as follows:

If an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to [medical benefits] during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified.

██ We have held that, when an employer invokes the bar of Code § 65.2-510 and establishes that an injured employee has been offered employment suitable to his residual capacity, the burden of persuasion shifts to the employee to show justification for refusing the offer. *American Furniture Co. v. Doane,* 230 Va. 39, 42, 334 S.E.2d 548, 550 (1985); *Klate Holt Co. v. Holt,* 229 Va. 544, 545, 331 S.E.2d 446, 447 (1985). Assuming, without deciding, that such a burden rests upon a claimant who relies on the constitutional right of free exercise of religion, we, nonetheless, disagree with Crowder's contention and the Court of Appeals' ruling. The Commission consistently has found justification for an employee's refusal of selective employment for economic reasons unrelated to the employee's work injury.[3] Therefore, in the circumstances of the present case, Ballweg was not required to show that his refusal of employment was causally related to his work injury.[4]

IV

A

██ Ballweg next contends that the Commission and the Court of Appeals violated his First Amendment right to free exercise of religion in refusing to reinstate his workers' compensation benefits. Ballweg relies upon four cases, decided by the United States Supreme Court, holding that a state may not deny unemployment compensation to a person who refuses work because of religious convictions. These cases are *Sherbert v. Verner,* 374 U.S. 398 (1963), *Thomas v. Review*

---

[3] *See, e.g., Dotson v. F.A. Bartlett Tree Expert Co.,* 71 O.W.C.C. 277 (1992) (employee justified in refusing selective employment requiring 80-mile commute without offer of transportation, travel expenses, or relocation costs); *Carder v. T.J. Max,* 71 O.W.C.C. 253 (1992) (employee justified in refusing selective employment requiring relocation or commute of 250-300 miles); *Mullins v. Misener Marine Constr.,* 69 O.I.C. 167 (1990) (employee justified in refusing selective employment requiring relocation); *Guthrie v. Ken Hurst Firearms Engraving,* 65 O.I.C. 221 (1986) (employee justified in refusing selective employment when "acceptance of the offer would be economically adverse to the claimant").

[4] Crowder advances another argument relating to Ballweg's burden of persuasion, one not relied upon by the Court of Appeals. Crowder contends that Ballweg failed to meet his burden of persuasion because he "made no effort to switch his [work] schedule with other employees" to avoid working on Saturdays. We find no merit to this argument. Even though the employer would have allowed such switching, the record shows that the job was offered to Ballweg on a Friday and, had he accepted the offer, he was required to report to work the next day—a Saturday. It is unreasonable to assume that a new employee, unacquainted with other employees, could have been able to make a "swap" on such short notice or that he could arrange "switchings" for a work schedule that included seven Saturdays out of every eight.

*Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707 (1981), *Hobbie* v. *Unemployment Appeals Comm'n of Florida,* 480 U.S. 136 (1987), and *Frazee* v. *Illinois Dept. of Employment Sec.,* 489 U.S. 829 (1989).

In *Sherbert,* a worker, who was a member of the Seventh-day Adventist Church, was discharged by her employer because she refused to work on Saturday, the Sabbath Day of her faith. 374 U.S. at 399. When she was unable to obtain other employment because she was not willing to work on Saturdays, she filed a claim for unemployment compensation benefits. *Id.* at 399-400. The South Carolina Unemployment Compensation Act provided that, to be eligible for benefits, a claimant must be "able to work and . . . available for work" and that a claimant is ineligible for benefits "[i]f . . . he has failed, without good cause, . . . to accept available suitable work when offered him by the employment office or the employer." *Id.* at 400 n.3. The South Carolina commission that administered the act denied the worker's claim on the ground that she refused to accept suitable work when it was offered to her, and the Supreme Court of South Carolina affirmed the commission's decision. *Id.* at 401.

In considering Sherbert's constitutional challenge, the Supreme Court stated the test to be applied in such a case:

> If . . . the decision of the South Carolina Supreme Court is to withstand [Sherbert's] constitutional challenge, it must be either because her disqualification as a beneficiary represents no infringement by the State of her constitutional rights of free exercise, or because any incidental burden on the free exercise of [Sherbert's] religion may be justified by a "compelling state interest in the regulation of a subject within the State's constitutional power to regulate."

*Id.* at 403 (quoting *NAACP* v. *Button,* 371 U.S. 415, 438 (1963)). In ruling that the denial of benefits imposed a substantial burden on Sherbert's free exercise of religion, the Supreme Court stated:

> Here not only is it apparent that [Sherbert's] declared ineligibility for benefits derives solely from the practice of her religion, but the pressure upon her to forego that practice is unmistakable. The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exer-

cise of religion as would a fine imposed against [Sherbert] for her Saturday worship.

*Id.* at 404. The Supreme Court also concluded that South Carolina had not shown a compelling state interest to justify its infringement on Sherbert's right of free exercise of religion. *Id.* at 407-09.

In *Thomas,* a worker quit his job because his religious beliefs prevented him from participating in the production of war materials. 450 U.S. at 709. The Supreme Court, relying upon and applying the test enunciated in *Sherbert,* ruled that the State of Indiana's refusal to award unemployment compensation to the worker violated his First Amendment right to free exercise of religion. 450 U.S. at 716-19.

In *Hobbie,* the State of Florida denied unemployment compensation benefits to an employee, who was a member of the Seventh-day Adventist Church, discharged because she refused to work from sundown on Friday to sundown on Saturday. 480 U.S. at 138-39. Consistent with its holdings in *Sherbert* and *Thomas,* the Supreme Court ruled that Florida's refusal to award benefits to Hobbie violated her right to free exercise of religion. *Id.* at 146.

In *Frazee,* an employee's claim for unemployment compensation benefits was denied because he refused a temporary position requiring him to work on Sunday, in violation of his personal religious beliefs. 489 U.S. at 830. The Illinois unemployment compensation statute provided that "[a]n individual shall be ineligible for benefits if he has failed, without good cause, either to apply for available, suitable work when so directed . . . or to accept work when offered him." *Id.* Relying upon *Sherbert, Thomas,* and *Hobbie,* the Supreme Court reversed the Illinois decision, finding that the denial of benefits to Frazee violated his First Amendment right to free exercise of religion. *Id.* at 835.

## B

Crowder advances several arguments in an effort to distinguish the present case from *Sherbert* and its progeny. First, Crowder contends that the burden imposed upon Ballweg's religious practices need not be justified by a compelling state interest and that a rational basis analysis will suffice. This is so, Crowder claims, because the Virginia Workers' Compensation Act, Code § 65.2-100 *et seq.* (the Act), is religion-neutral and of general applicability. The purpose of the Act, Crowder asserts, is to compensate workers for industrial injuries. Crowder further asserts that the Act balances the interests of

employers and employees, applies to all employees, does not favor or discriminate against any religious beliefs, and does not regulate or prohibit conduct undertaken for religious reasons. To support this contention, Crowder relies primarily upon *Employment Div., Dept. of Human Resources of Oregon* v. *Smith,* 494 U.S. 872 (1990).

■ The issue presented in *Smith* was "whether the Free Exercise Clause of the First Amendment permits the State of Oregon to include religiously inspired peyote use within the reach of its general criminal prohibition on use of that drug, and thus permits the State to deny unemployment benefits to persons dismissed from their jobs because of such religiously inspired use."[5] 494 U.S. at 874. The Supreme Court of Oregon, relying upon *Sherbert* and *Thomas,* had ruled that the persons were entitled to receive unemployment compensation benefits. *Id.* at 875. The Supreme Court reversed. *Id.* at 890. The Supreme Court determined that the Oregon statute in question was "an across-the-board criminal prohibition," *id.* at 884, and thus was of general application, *id.* at 886. The Court ruled that under the Free Exercise Clause, a law that burdens a religious practice need not be justified by a compelling state interest if the law is neutral and of general applicability. *Id.* at 885. Therefore, the Court concluded that the "compelling governmental interest" test was inapplicable. *Id.*

Ballweg counters Crowder's argument by demonstrating the similarity between the Act involved in the present case and the statutes considered in *Sherbert, Thomas, Hobbie,* and *Frazee* (the Unemployment Compensation Statutes). The Unemployment Compensation Statutes authorize each state to grant exceptions and allow compensation for "good cause."[6] Similarly, the Act authorizes the Commission to grant exceptions and continue workers' compensation benefits if "in the opinion of the Commission [the worker's] refusal [of selective employment] was justified," Code § 65.2-510, and, indeed, as previously noted, the Commission has granted exceptions when enforcement of the Act would impose an economic burden on a claimant.

■ We do not think the Act can be equated with a neutral criminal statute of general application. To the contrary, we agree with what Chief Justice Burger said in *Bowen* v. *Roy,* 476 U.S. 693 (1986), when he distinguished *Sherbert* and *Thomas* from *Roy*:

---

[5] Peyote, a hallucinogen, is a "controlled substance," possession of which is a felony under Oregon law.

[6] *Sherbert,* 374 U.S. at 400 n.3; *Thomas,* 450 U.S. at 709-10 n.1; *Hobbie,* 480 U.S. at 138; *Frazee,* 489 U.S. at 830.

We reject [Roy's] contention that *Sherbert* and *Thomas* compel affirmance. The statutory conditions at issue in those cases provided that a person was not eligible for unemployment compensation benefits if, "without good cause," he had quit work or refused available work. The "good cause" standard created a mechanism for individualized exemptions. *If a state creates such a mechanism, its refusal to extend an exemption to an instance of religious hardship suggests a discriminatory intent. Thus, as was urged in Thomas, to consider a religiously motivated resignation to be "without good cause" tends to exhibit hostility, not neutrality, towards religion. . . . In [Sherbert and Thomas], therefore, it was appropriate to require the State to demonstrate a compelling reason for denying the requested exemption.*

*Id.* at 708. (Emphasis added.)

█ Moreover, while it is true that, in the present case, the Act does not compel Ballweg to violate his religious beliefs, "this is only the beginning, not the end, of our inquiry." *Sherbert,* 374 U.S. at 403-04. Indeed, "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Wisconsin v. Yoder,* 406 U.S. 205, 220 (1972). Accordingly, we reject Crowder's argument.

## C

Crowder also endeavors to distinguish *Sherbert* and its progeny from the present case on the basis that the former dealt with unemployment compensation benefits and the latter deals with workers' compensation benefits. Crowder argues that workers' compensation benefits are "private in nature" and unemployment compensation benefits are "public in nature." The Court of Appeals, in accepting this distinction, stated that "unemployment payments are funded by the state by taxes imposed on its citizens; worker's compensation benefits, however, are paid by the employer or its insurance carrier from premiums received from the employer." *Ballweg,* 16 Va. App. at 35, 427 S.E.2d at 733.

█ We do not think the source of funds is determinative in the present case. Indeed, it is the Commonwealth's action in administering the Act, not the method utilized to fund the benefits, that forces the claimant " 'to choose between fidelity to religious belief and employment,' " and thereby " 'brings unlawful coercion to bear on the

[claimant's] choice.' " *Frazee,* 489 U.S. at 832 (*quoting Hobbie,* 480 U.S. at 144).[7]

## D

Crowder further contends that, even if the "compelling state interest" test applies, the Act "advances a compelling state interest in protecting workers and their dependents against the costs of workplace accidents." Crowder further states that "[t]here is a compelling state interest . . . in assuring equal and nondiscriminatory application of the . . . Act to all employees within this Commonwealth."

■ We reject this contention. Nothing in the record suggests that the Commonwealth's legitimate interest in administering the Act equitably and efficiently would be thwarted by protecting Ballweg's sincerely held religious beliefs. The Supreme Court has stated that "only those interests of the *highest order* . . . can overbalance legitimate claims to the free exercise of religion." *Yoder,* 406 U.S. at 215. (Emphasis added.) In the present case, the state interests suggested by Crowder, based upon mere conclusions, are not sufficiently compelling to justify the substantial burden placed upon Ballweg's religious freedom.[8]

## V

■ In sum, we see no real distinction between the present case and *Sherbert* and its progeny. For all the reasons stated, we conclude that the Court of Appeals and the Commission erred in denying Ballweg workers' compensation benefits because such denial violated Ballweg's right of free exercise of religion.

Accordingly, we will reverse the Court of Appeals' judgment and the Commission's order and remand the case to the Court of Appeals with direction that it remand the case to the Commission for entry of an order consistent with this opinion.

*Reversed and remanded.*

---

[7] We also do not accept the distinction drawn by Crowder and the Court of Appeals. The Unemployment Compensation Statutes were not funded by taxes imposed generally upon the citizens of the respective states; rather, they were funded by the employer. *See* S.C. Code Ann. § 41-31-20 (Law. Co-op. 1976); Ind. Code Ann. § 22-4-10-1 (Burns 1992); Fla. Stat. Ann. § 443.131 (West 1993); Ill. Ann. Stat. ch. 48, para. 570 (Smith-Hurd 1986). Likewise, workers' compensation benefits are funded by the employer. *See* Code §§ 65.2-800 and -801.

[8] Almost as an aside, Crowder suggests that to compel the Commonwealth to pay benefits to Ballweg fosters a religious faith, in violation of the First Amendment's Establishment Clause. This precise contention was rejected in *Sherbert,* 374 U.S. at 409, *Thomas,* 450 U.S. at 719-20, and *Hobbie,* 480 U.S. at 144-45, and we also reject it.