COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Elder and Bray
Argued at Salem, Virginia


TIMOTHY MARC HOREN

v.   Record No. 2835-95-3

COMMONWEALTH OF VIRGINIA                    OPINION BY
                                   CHIEF JUDGE NORMAN K. MOON
DIANE PATRICIA HOREN                    JANUARY 14, 1997

v.   Record No. 2836-95-3

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                      Thomas H. Wood, Judge

         James J. Knicely (Samuel Swindell; Knicely &
         Cotorceanu; Kratman, Pethybridge & Swindell,
         on briefs), for appellants.

         Kathleen B. Martin, Assistant Attorney
         General (James S. Gilmore, III, Attorney
         General, on brief), for appellee.



     Timothy Horen and Diane Horen were convicted of possession

of wild bird feathers and parts in violation of Code

§ 29.1-521(10).[1]  The dispositive question is whether the

application of Code § 29.1-521(10) to prohibit the possession of

lawfully obtained owl feathers for the practice of the Horens'

Native American religion violates their constitutional right to

the free exercise of religion.

─────────────────
     [1] Code § 29.1-521(10) in relevant part makes it a Class three
misdemeanor for any person to "possess . . . at any time or in any
manner, any wild bird . . . or any part thereof, except as
specifically permitted by law and only by the manner or means and
within the numbers stated."  The term "wild birds" is not defined
in the Virginia Code; however, "all species of wild birds" are
included within the definition of "wildlife" in Title 29.1.

We find that Code § 29.1-521(10) is not a religiously neutral statute, that it substantially burdens the free exercise of the Horens' religion, and that the Commonwealth failed to prove that application of it to the Horens advances a compelling state interest or does so in the least restrictive manner. Therefore, we hold that under the facts and circumstances of this case the application of Code § 29.1-521(10) to the Horens violates their constitutional right to the free exercise of their religion and their rights under the Religious Freedom Restoration Act.

On February 10, 1995, responding to an anonymous complaint that the Horens had hybrid wolf pups and wild bird parts at their residence, Officer Steve Bullman, a State Game Warden, and Officer Bill Parker conducted an undercover investigation. Bullman and Parker, dressed in plain clothes, approached Mrs. Horen, a Native American medicine woman and member of the Southeastern Cherokee Confederacy, at her home and pretended to be interested in purchasing wolf pups. Mrs. Horen explained that she did not have any pups at present but that she would take the gentlemen's addresses and phone numbers and contact them when she did.

Bullman and Parker accompanied Mrs. Horen into her home. Inside, they observed a variety of Native American objects which had adorning feathers. The officers also observed two sets of wings and two sets of bird feet, later identified as owl feet and wings. Subsequently, these items were seized, and the Horens

- 2 -

were charged with violations of Code § 29.1-521(10).

The circuit court held a pretrial evidentiary hearing on the Horens' motions to dismiss the indictments on free exercise and other constitutional grounds. The Horens produced evidence regarding the significance of the owl feathers in the practice of their Native American religion. In addition to the Horens' testimony, George Branham Whitewolf also testified on the Horens' behalf. Whitewolf identified himself as a Lakota, or Sioux, Indian. He testified that he is the spiritual leader for the Monocan Tribe in Virginia and that he has practiced the Native American religion for forty-eight years. Whitewolf indicated that he has been a Native American religion advisor for the Virginia prison system and was appointed by President Clinton to serve as a religious advisor to a committee to rewrite the Native American Religious Freedom Act.

The Horens and Whitewolf testified that feathers and other bird parts are significant objects in the Native American religion because they represent the spirit of the bird from which they come. Mrs. Horen testified that certain essentials of the Native American religion, such as prayer, cleansing, purification, consecration and healing practices require feathers or other bird parts. Whitewolf testified that "Mrs. Horens' religious beliefs are consistent with the Native American religion. Different feathers mean different things to different tribes. For example, I wouldn't touch an owl feather. To me an owl is a symbol of death, and I wouldn't want anything to do with

an owl.  But in other tribes, the owl is revered.  The feathers are a must for Indians."  Mrs. Horen testified that owl feathers are of special significance to her tribe and that because they are the feathers of soaring birds, "they carry prayers to the Creator; as night hunters, they fly noiselessly and see well in the dark; and as night messengers of death, their feathers are strong medicine."

Whitewolf also testified that the Horens could not get a permit to have feathers because the Horens are not members of a federally recognized tribe.  Whitewolf explained that there is a feather bank in Colorado which is supposed to be the only place to obtain feathers and that he is one of only one hundred and twenty people who are not members of federally recognized tribes that have permits to have feathers.  Whitewolf stated that he acquired his permit before the federal government decided to limit permits to people who belong to a federally recognized tribe.[2]

Mr. Horen testified that the owl is a bird revered by the Iroquois from whom the Horens are descended.  Mr. Horen also testified that they do not believe in killing these birds because this would dishonor the Creator.  Mr. Horen explained he believes that if you find a feather it is a gift from the Creator and before picking up the feather you must perform a ceremony indicating your respect.  Mr. Horen stated that the feathers and

_____

[2] See also United States v. Abeyta, 632 F. Supp. 1301, 1302-04 (D.N.M. 1986).

owl parts seized from his home were from two dead owls he discovered along roadsides and that he and his family found some of the feathers while walking in the woods.

The Horens' motions to dismiss on free exercise, free speech, equal protection, and due process grounds were denied. In denying the motions, the trial court stated its belief that the protection of fowl was a compelling governmental interest and that the imposition of a Class three misdemeanor for mere possession was the least restrictive means of accomplishing this goal. The court also refused to permit the Horens to present evidence about the religious significance of their possession of the seized items. The Horens were permitted to put on the record in restricted form a statement that the items seized had religious significance. However, they were not allowed to explain the religious significance of the seized items. The circuit court also refused to give the Horens' proposed jury instructions elaborating on federal and state constitutional and statutory defenses.

Free Exercise

The Free Exercise Clause of the United States Constitution, Article I, U.S. Const. amend. I, the Constitution of Virginia, Va. Const., art. I, § 16, and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb(b)(2) (1994), prohibit state imposition of substantial burdens on the exercise of religion unless the state advances a compelling government interest which is furthered in the least restrictive manner.

In <u>Employment Division, Department of Human Resources of</u> <u>Oregon v. Smith</u>, 494 U.S. 872 (1990), the United States Supreme Court found that a religiously neutral law of general application that substantially burdens the free exercise of religion will survive free exercise challenge where the law rationally advances a legitimate state interest. However, where a law that substantially burdens the free exercise of religion is not "neutral," the government must prove that the law is necessary to advance a compelling government interest and does so in the least restrictive manner. <u>Sherbert v. Verner</u>, 374 U.S. 398 (1963); <u>Wisconsin v. Yoder</u>, 406 U.S. 205 (1972).

We find that Code § 29.1-521(10) is not a religiously neutral law. In relevant part, Code § 29.1-521(10) makes it a class three misdemeanor for any person to "possess . . . at any time or in any manner, any wild bird . . . or any part thereof, <u>except as specifically permitted by law</u> and only by the manner or means and within the numbers stated." (Emphasis added). Possession of owl feathers is permitted under Virginia law by taxidermists, academics, researchers, museums, and educational institutions. <u>See</u> Code §§ 29.1-415 through 29.1-422. Further, federal law specifically allows for the possession and use of eagle feathers in the Native American religion. <u>See</u> C.F.R. § 22.22 (1984). However, at the time of trial there was no specific exception for the possession of owl feathers for religious use under either Code § 29.1-521(10) or under federal

law.[3]  Consequently, while allowing for a variety of legitimate secular uses of owl feathers, Code § 29.1-521(10) inexplicably denies an exception for bona fide religious uses and thereby draws specific subject matter distinctions in regulating the use of feathers.

Where the state creates a mechanism for legitimate individualized exceptions but fails to include religious uses among these legitimate exceptions, discriminatory intent may be inferred.  Ballweg v. Crowder Contracting Co., 247 Va. 205, 212-13, 440 S.E.2d 613, 618 (1993).  Failure to make allowance for bona fide religious uses "tends to exhibit hostility, not neutrality, towards religion. . . ."  Bowen v. Roy, 476 U.S. 693 (1986); Ballweg, 247 Va. at 213, 440 S.E.2d at 618.  In Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, the United States Supreme Court, found that "[t]he Free Exercise Clause `protect[s] religious observers against unequal treatment.'"  113 S. Ct. 2217, 2232 (1993).  Accordingly, the Court held that because the city ordinance made exceptions for other religiously and secularly motivated animal killings, it could not be characterized as a law of neutral applicability.  113 S. Ct. at 2232.  Like the ordinance in Hialeah, Code § 29.1-521(10) makes

_____

[3] Federal law did provide for the possession of eagle feathers for religious purposes.  50 C.F.R. § 22.22 (1984).  However, appellants' expert testified that because appellants' Native American heritage was from a tribe not federally recognized, he did not believe they would qualify for even this type of permit. See 50 C.F.R. § 22.22(a)(3),(5) (1983); 50 Fed. Reg. 39,047 (September 26, 1985); 50 C.F.R. §§ 10.13, 13.12(b) (1985); 50 C.F.R. 21.11-11-21.41 (1989).

exceptions for some uses while excluding bona fide religious uses and therefore is not a religiously neutral statute. Consequently, Code § 29.1-521(10) must be examined under the "compelling interest" test as set forth in Sherbert. Finding that Code § 29.1-521(10) is not a religiously neutral statute and therefore must pass the compelling interest test, we do not reach the issue of whether this case involves an instance in which the burdening of the free exercise of religion is coupled with the burdening of another constitutionally protected right.

Even if we were to find that Code § 29.1-521(10) was a neutral law of general applicability, application of the compelling interest test would nonetheless be required under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb(b)(2) (1994) (hereinafter "RFRA"). Responding to Smith, Congress passed the RFRA in 1993. The RFRA was designed to "restore the compelling state interest test . . . and to guarantee its application in all cases where free exercise of religion is substantially burdened." Id. at § (b)(1).

> The RFRA provides:
> (a) IN GENERAL -- Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).
> (b) EXCEPTION -- Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person --
>
> (i)