COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Moon, Judges Elder and Bray
Argued at Salem, Virginia


TIMOTHY MARC HOREN

v.    Record No. 2835-95-3

COMMONWEALTH OF VIRGINIA                    OPINION BY
                                  CHIEF JUDGE NORMAN K. MOON
DIANE PATRICIA HOREN                       JANUARY 14, 1997

v.    Record No. 2836-95-3

COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                   Thomas H. Wood, Judge

        James J. Knicely (Samuel Swindell; Knicely &
        Cotorceanu; Kratman, Pethybridge & Swindell,
        on briefs), for appellants.

        Kathleen B. Martin, Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.



     Timothy Horen and Diane Horen were convicted of possession

of wild bird feathers and parts in violation of Code

§ 29.1-521(10).[1]  The dispositive question is whether the

application of Code § 29.1-521(10) to prohibit the possession of

lawfully obtained owl feathers for the practice of the Horens'

Native American religion violates their constitutional right to

the free exercise of religion.
_____
     [1] Code § 29.1-521(10) in relevant part makes it a Class three
misdemeanor for any person to "possess . . . at any time or in any
manner, any wild bird . . . or any part thereof, except as
specifically permitted by law and only by the manner or means and
within the numbers stated."  The term "wild birds" is not defined
in the Virginia Code; however, "all species of wild birds" are
included within the definition of "wildlife" in Title 29.1.

We find that Code § 29.1-521(10) is not a religiously neutral statute, that it substantially burdens the free exercise of the Horens' religion, and that the Commonwealth failed to prove that application of it to the Horens advances a compelling state interest or does so in the least restrictive manner. Therefore, we hold that under the facts and circumstances of this case the application of Code § 29.1-521(10) to the Horens violates their constitutional right to the free exercise of their religion and their rights under the Religious Freedom Restoration Act.

On February 10, 1995, responding to an anonymous complaint that the Horens had hybrid wolf pups and wild bird parts at their residence, Officer Steve Bullman, a State Game Warden, and Officer Bill Parker conducted an undercover investigation. Bullman and Parker, dressed in plain clothes, approached Mrs. Horen, a Native American medicine woman and member of the Southeastern Cherokee Confederacy, at her home and pretended to be interested in purchasing wolf pups. Mrs. Horen explained that she did not have any pups at present but that she would take the gentlemen's addresses and phone numbers and contact them when she did.

Bullman and Parker accompanied Mrs. Horen into her home. Inside, they observed a variety of Native American objects which had adorning feathers. The officers also observed two sets of wings and two sets of bird feet, later identified as owl feet and wings. Subsequently, these items were seized, and the Horens

- 2 -

were charged with violations of Code § 29.1-521(10).

The circuit court held a pretrial evidentiary hearing on the Horens' motions to dismiss the indictments on free exercise and other constitutional grounds. The Horens produced evidence regarding the significance of the owl feathers in the practice of their Native American religion. In addition to the Horens' testimony, George Branham Whitewolf also testified on the Horens' behalf. Whitewolf identified himself as a Lakota, or Sioux, Indian. He testified that he is the spiritual leader for the Monocan Tribe in Virginia and that he has practiced the Native American religion for forty-eight years. Whitewolf indicated that he has been a Native American religion advisor for the Virginia prison system and was appointed by President Clinton to serve as a religious advisor to a committee to rewrite the Native American Religious Freedom Act.

The Horens and Whitewolf testified that feathers and other bird parts are significant objects in the Native American religion because they represent the spirit of the bird from which they come. Mrs. Horen testified that certain essentials of the Native American religion, such as prayer, cleansing, purification, consecration and healing practices require feathers or other bird parts. Whitewolf testified that "Mrs. Horens' religious beliefs are consistent with the Native American religion. Different feathers mean different things to different tribes. For example, I wouldn't touch an owl feather. To me an owl is a symbol of death, and I wouldn't want anything to do with

an owl.  But in other tribes, the owl is revered.  The feathers are a must for Indians."  Mrs. Horen testified that owl feathers are of special significance to her tribe and that because they are the feathers of soaring birds, "they carry prayers to the Creator; as night hunters, they fly noiselessly and see well in the dark; and as night messengers of death, their feathers are strong medicine."

Whitewolf also testified that the Horens could not get a permit to have feathers because the Horens are not members of a federally recognized tribe.  Whitewolf explained that there is a feather bank in Colorado which is supposed to be the only place to obtain feathers and that he is one of only one hundred and twenty people who are not members of federally recognized tribes that have permits to have feathers.  Whitewolf stated that he acquired his permit before the federal government decided to limit permits to people who belong to a federally recognized tribe.[2]

Mr. Horen testified that the owl is a bird revered by the Iroquois from whom the Horens are descended.  Mr. Horen also testified that they do not believe in killing these birds because this would dishonor the Creator.  Mr. Horen explained he believes that if you find a feather it is a gift from the Creator and before picking up the feather you must perform a ceremony indicating your respect.  Mr. Horen stated that the feathers and

_____

[2] See also United States v. Abeyta, 632 F. Supp. 1301, 1302-04 (D.N.M. 1986).

- 4 -

owl parts seized from his home were from two dead owls he discovered along roadsides and that he and his family found some of the feathers while walking in the woods.

The Horens' motions to dismiss on free exercise, free speech, equal protection, and due process grounds were denied. In denying the motions, the trial court stated its belief that the protection of fowl was a compelling governmental interest and that the imposition of a Class three misdemeanor for mere possession was the least restrictive means of accomplishing this goal. The court also refused to permit the Horens to present evidence about the religious significance of their possession of the seized items. The Horens were permitted to put on the record in restricted form a statement that the items seized had religious significance. However, they were not allowed to explain the religious significance of the seized items. The circuit court also refused to give the Horens' proposed jury instructions elaborating on federal and state constitutional and statutory defenses.

## Free Exercise

The Free Exercise Clause of the United States Constitution, Article I, U.S. Const. amend. I, the Constitution of Virginia, Va. Const., art. I, § 16, and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb(b)(2) (1994), prohibit state imposition of substantial burdens on the exercise of religion unless the state advances a compelling government interest which is furthered in the least restrictive manner.

In <u>Employment Division, Department of Human Resources of</u> <u>Oregon v. Smith</u>, 494 U.S. 872 (1990), the United States Supreme Court found that a religiously neutral law of general application that substantially burdens the free exercise of religion will survive free exercise challenge where the law rationally advances a legitimate state interest. However, where a law that substantially burdens the free exercise of religion is not "neutral," the government must prove that the law is necessary to advance a compelling government interest and does so in the least restrictive manner. <u>Sherbert v. Verner</u>, 374 U.S. 398 (1963); <u>Wisconsin v. Yoder</u>, 406 U.S. 205 (1972).

We find that Code § 29.1-521(10) is not a religiously neutral law. In relevant part, Code § 29.1-521(10) makes it a class three misdemeanor for any person to "possess . . . at any time or in any manner, any wild bird . . . or any part thereof, <u>except as specifically permitted by law</u> and only by the manner or means and within the numbers stated." (Emphasis added). Possession of owl feathers is permitted under Virginia law by taxidermists, academics, researchers, museums, and educational institutions. <u>See</u> Code §§ 29.1-415 through 29.1-422. Further, federal law specifically allows for the possession and use of eagle feathers in the Native American religion. <u>See</u> C.F.R. § 22.22 (1984). However, at the time of trial there was no specific exception for the possession of owl feathers for religious use under either Code § 29.1-521(10) or under federal

- 6 -

law.[3]  Consequently, while allowing for a variety of legitimate secular uses of owl feathers, Code § 29.1-521(10) inexplicably denies an exception for bona fide religious uses and thereby draws specific subject matter distinctions in regulating the use of feathers.

Where the state creates a mechanism for legitimate individualized exceptions but fails to include religious uses among these legitimate exceptions, discriminatory intent may be inferred.  Ballweg v. Crowder Contracting Co., 247 Va. 205, 212-13, 440 S.E.2d 613, 618 (1993).  Failure to make allowance for bona fide religious uses "tends to exhibit hostility, not neutrality, towards religion. . . ."  Bowen v. Roy, 476 U.S. 693 (1986); Ballweg, 247 Va. at 213, 440 S.E.2d at 618.  In Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, the United States Supreme Court, found that "[t]he Free Exercise Clause `protect[s] religious observers against unequal treatment.'"  113 S. Ct. 2217, 2232 (1993).  Accordingly, the Court held that because the city ordinance made exceptions for other religiously and secularly motivated animal killings, it could not be characterized as a law of neutral applicability.  113 S. Ct. at 2232.  Like the ordinance in Hialeah, Code § 29.1-521(10) makes

---

[3] Federal law did provide for the possession of eagle feathers for religious purposes.  50 C.F.R. § 22.22 (1984).  However, appellants' expert testified that because appellants' Native American heritage was from a tribe not federally recognized, he did not believe they would qualify for even this type of permit. See 50 C.F.R. § 22.22(a)(3),(5) (1983); 50 Fed. Reg. 39,047 (September 26, 1985); 50 C.F.R. §§ 10.13, 13.12(b) (1985); 50 C.F.R. 21.11-11-21.41 (1989).

exceptions for some uses while excluding bona fide religious uses and therefore is not a religiously neutral statute. Consequently, Code § 29.1-521(10) must be examined under the "compelling interest" test as set forth in Sherbert. Finding that Code § 29.1-521(10) is not a religiously neutral statute and therefore must pass the compelling interest test, we do not reach the issue of whether this case involves an instance in which the burdening of the free exercise of religion is coupled with the burdening of another constitutionally protected right.

Even if we were to find that Code § 29.1-521(10) was a neutral law of general applicability, application of the compelling interest test would nonetheless be required under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb(b)(2) (1994) (hereinafter "RFRA"). Responding to Smith, Congress passed the RFRA in 1993. The RFRA was designed to "restore the compelling state interest test . . . and to guarantee its application in all cases where free exercise of religion is substantially burdened." Id. at § (b)(1).

> The RFRA provides:
>     (a) IN GENERAL -- Government shall not
>     substantially burden a person's exercise of
>     religion even if the burden results from a
>     rule of general applicability, except as
>     provided in subsection (b).
>     (b) EXCEPTION -- Government may
>     substantially burden a person's exercise of
>     religion only if it demonstrates that
>     application of the burden to the person --
>
>         (i) is in furtherance of a compelling
>         government interest; and
>
>         (ii) is the least restrictive means of

> furthering that compelling
> governmental interest.

42 U.S.C. § 2000bb-1 (1994).  Accordingly, to prevail on a RFRA defense to a law of general applicability, a person must first establish that their exercise of religion has been substantially burdened.  The "burdens of going forward with the evidence and of persuasion" then shift to the government to prove that application of the general law to the person furthers a compelling government purpose and is the least restrictive means of furthering that purpose.  42 U.S.C. § 2000bb-2(3).

### Substantial Burden

Before applying the compelling interest test, it is necessary under both the Free Exercise Clause and the RFRA to address the threshold question of whether the Horens have proven that Code § 29.1-521(10), as applied to the Horens, "substantially burdens" the free exercise of their religion.[4]  A substantial burden is imposed on the free exercise of religion where governmental action compels a party to affirm a belief they do not hold, discriminates on the basis of religious beliefs, inhibits the dissemination of particular religious beliefs, or

---

[4] The Commonwealth did not challenge appellants' professed convictions of faith.  Nonetheless, the showing necessary for a religious belief to be considered genuine is a minimal one.  <u>See</u>, <u>e.g.</u>, <u>Hernandez v. Commissioner</u>, 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretation of those creeds"); <u>Thomas v. Review Bd.</u>, 450 U.S. 707, 714 (1981) ("[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection").

compels a party to forgo their religious practices.  Battles v. Anne Arundel County Board of Educ., 904 F. Supp. 471, 476-77 (D. Md. 1995); cf. Ballweg v. Crowder Contracting Co., 247 Va. 205, 209-11, 440 S.E.2d 613, 616-17 (1993).  In Ballweg, the Virginia Supreme Court held that government action which resulted in a person having to choose between employment and practice of their religion constituted a substantial burden.  247 Va. at 213-14, 440 S.E.2d at 618.

Here, the Horens introduced uncontested evidence that their possession and use of owl feathers was pursuant to sincerely-held religious beliefs.  See supra note 4.  The Commonwealth did not contest at trial the evidence of the impact of Code § 29.1-521(10) on the Horens' exercise of their religion.  The Commonwealth argues for the first time on brief that the impact was not substantial.  We read the trial court's decision as finding that the Horens held sincere beliefs, that the law had a substantial impact on the exercise of their religion, but that a compelling state interest justified the impact.

The Horens and their expert, Whitewolf, presented substantial evidence that: (1) the use of feathers is necessary to certain essentials of the Native American religion, such as prayer, cleansing, purification, consecration and healing practices; (2) the owl is revered among the Horens' tribal descendants and has special religious significance; and (3) owl feathers are of special religious significance to the Horens' tribe because they assist in carrying the Horens' prayers to the

- 10 -

creator.  Mrs. Horen further testified that:

>I practice the Native American religion.
>. . . I am a member of the Otter Band of the
>tribe and a medicine woman.  I had these
>feathers to practice my religion.  Feathers
>are very significant in the Native American
>religion.  I believe that, when you find a
>feather, it is a gift from the Creator to
>you.  We honor the Creator by using these
>feathers when we pray.  [Owl] feathers are
>particularly significant because they are
>soaring birds and, when we pray, the spirit
>of these birds carry our prayers higher to
>the Creator.  Owl feathers are very strong
>medicine.  The owl is a messenger and
>symbolizes death and wisdom.  We use feathers
>to smudge with and for healing.  Being a
>medicine woman, I need these things.

The Horens also introduced uncontested evidence of the impact of Code § 29.1-521(10) on their practice of their Native American religion.  The Horens described the various items seized from their home and the religious significance of each item.  These items included the Horens' dream catcher, which Mrs. Horen testified is used to catch bad dreams and thoughts and "[t]he feathers attached to it carry the good dreams and thoughts to the Creator."  The Horens' owl wings, which Mrs. Horen testified are used to honor the Creator and smudge smoke over religious items and the sick, were also taken.  Mr. Horens' prayer rattle was also seized.  After describing the religious import of these items, Mrs. Horen offered the following testimony regarding the impact of the state's action:

>I feel like my home has been raped.  I can't
>very well be a medicine person for my tribe
>without my medicine.  It's not the same when
>I pray anymore.  I know in my heart that the
>Creator hears me, but I know my prayers
>aren't carried as high.  It has affected my

relationship with my family and the Creator
and my tribe.

While the Horens' religious artifacts may not be
commonplace, they are, according to the evidence, akin to the
Bible, crosses and Madonnas that are hallmarks of the Christian
faith.  Dispossessing a family of such items would likely be
viewed as substantial interference with the exercise of their
Christian faith.  Here, like the situation in Ballweg, the
state's action forced the Horens "to choose between fidelity to
religious belief and [punishment] and thereby `bring[s] unlawful
coercion to bear on the[ir] choice.'"  247 Va. at 213-14, 440
S.E.2d at 618 (quoting Fraze v. Illinois Dept. of Employment
Sec., 489 U.S. 829, 832 (1989).  Consequently, we find that Code
§ 29.1-521(10) imposes a substantial burden on the Horens' free
exercise of their Native American religion.

### Compelling State Interest

Having found a substantial burden on the Horens' free
exercise of their religion, we must next consider whether the
Commonwealth met its burden of proving a compelling state
interest, as required under both the Free Exercise Clause and the
RFRA.  As noted previously, the RFRA incorporates the compelling
interest test as applied under the Free Exercise Clause and as
articulated in Sherbert:

> It is basic that no showing merely of a
> rational relationship to some colorable state
> interest [will] suffice; in this highly
> sensitive constitutional area, only the
> gravest abuses, endangering paramount
> interests, give occasion for permissible
> limitation.

374 U.S. at 406; 42 U.S.C. § 2000bb(b)(1).

The Commonwealth's interests in the protection of wild birds generally and owls specifically are obviously important. However, the Commonwealth has not established that application of Code § 29.1-521(10) to the Horens furthers any compelling state interest. Appellee asserted and the trial court found that the compelling state interest served by Code § 29.1-521(10) is protection and preservation of wild birds. Here, the Horens use stray feathers or the feathers of dead owls in their preparation of religious items. The Commonwealth presented no evidence to suggest that the Commonwealth's interest in preserving and protecting wild birds is in any way advanced by prohibiting the Horens' bona fide religious uses of owl feathers.

Other jurisdictions considering this matter have generally required that the state must introduce evidence that the animal protected by state law is "endangered" or at least threatened. See United States v. Jim, 888 F. Supp. 1058 (D. Ore. 1995) (holding that criminal sanctions for killing eagles advanced a compelling state interest given proof that the eagles were threatened); United States v. Billie, 667 F. Supp. 1485 (S.D. Fla. 1987) (holding criminal sanctions for killing panthers advanced a compelling state interest given proof that the panthers were endangered); United States v. Abeyta, 632 F. Supp. 1301, 1307 (D.N.M. 1986). In Abeyta, the court found that prosecution under the Eagle Protection Act, 16 U.S.C. § 668 et

seq. (1940), of a Native American for killing a golden eagle violated his First Amendment rights. Id. The court concluded that "[t]he Golden Eagle is not an endangered species. The uncontradicted testimony at trial established that some eagles could be taken without harmful impact on the remaining population. The government's conservation interests therefore are not compelling and cannot warrant a constriction of Indian religious liberty." Id.

Abeyta presents a more precise tension between the religious exercise involved and the state's interest than is presented in this case. The Commonwealth produced no evidence establishing how preventing the Horens from collecting and possessing found feathers or feathers from dead owls serves the state's goal of preserving wild birds. Accordingly, based on the evidence presented, we find that the Commonwealth failed to meet its burden of proving a compelling state interest.

## Least Restrictive Means

Assuming, arguendo, that we found that application of Code § 29.1-521(10) to the Horens furthered a compelling interest of the Commonwealth, such application would nonetheless violate the Horens' Free Exercise and RFRA rights because it is not the least restrictive means of furthering the Commonwealth's interest. Here, the circuit court considered only whether the Class three misdemeanor penalties for possession, when viewed in the context of the state's Class one misdemeanor penalties for the killing of or trafficking in owls and owl parts, constituted the "least

– 14 –

restrictive" means of furthering the state's interests. Such "relative penalty" analysis does not address whether this law is the least restrictive means of accomplishing the state's purpose. The variety of permits and exemptions made for secular purposes could easily have included permits for the use of legally obtained owl feathers or parts for religious purposes. Such an exception would broaden little, if at all, the scope of the present use exceptions. Further, as noted earlier, no evidence was introduced which suggested that allowing the Horens to obtain permits for their bona fide religious uses of owl feathers would to any degree impede the effectiveness of the Commonwealth's preservation and protection efforts.

Having found that Code § 29.1-521(10) is not a religiously neutral statute, that it substantially burdens the free exercise of the Horens' religion, and that application of it to the Horens does not further a compelling state interest nor does so in the least restrictive manner, we reverse the Horens' convictions. Further, in light of our holding in this matter, we need not reach the issues of: (1) whether the trial court erred in refusing to instruct the jury on the statutory phrase "except as specifically permitted by law" as an element of the offense; (2) whether the court erred in failing to adopt a limiting construction of Code § 29.1-521(10) or to instruct the jury on scienter or knowledge as a necessary element for conviction under statutes imposing affirmative obligations or burdening fundamental rights; or (3) whether the Horens' equal protection

and free speech rights were violated.

<u>Reversed and dismissed.</u>