WILLIS, Judge.
On appeal from the termination of his in-person visitation with the parties’ two minor children and the award of sole legal custody to Sonja Knipe Roberts (mother), Jeffrey Scott Roberts (father) contends: 1) that the trial court erred by failing to consider properly “the presumption that parents act in the best interests of their children,” 2) that the trial court’s decision violated his right to free exercise of religion, 3) that Code § 20-124.2 is unconstitutional, 4) that the trial court did not apply Code § 20-124.2 properly, 5) that the trial court denied him due process of law, and 6) that the trial court erred in denying his motion for child support reduction. We affirm the judgment of the trial court.

BACKGROUND

On appeal, we view the evidence in the light most favorable to the party prevailing below, affording to the evidence all inferences reasonably deducible therefrom. See McGuire v. McGuire, 10 Va.App. 248, 250, 391 S.E.2d 344, 346 (1990).

Visitation

So viewed, the evidence disclosed that the parties were married on February 25, 1989 and were divorced by a final decree entered June 24, 1998. Two children were born of the marriage, N. and H., aged twelve and ten years, respectively, at the time of the subject trial court hearing. Following the divorce, the parties returned to court several times concerning *519 visitation and support. Mother was awarded physical custody of the children with liberal visitation granted to father. After father moved to North Carolina, the children continued to visit him at the residence he shared with his new wife and her children from a previous marriage. The current action began on December 3, 2001, when mother filed a “Motion to Suspend or Modify Visitation,” alleging that continued visitation between father and the children was not in the children’s best interests.
The children began complaining of physical ailments immediately prior to their having to leave for visitation with father. They were apprehensive about the visits and complained that father threatened them and inflicted corporal punishment upon them. N. testified he and his sister disliked visiting father because they were required to spend much time reading the Bible and doing chores. He testified that father did not allow them to watch television and allowed them no “free time.” Father told the children that mother was a fornicator and adulterer and that she would go to hell. Once, following an incident when the children obeyed mother instead of father, he told them if they died at that time they would go to hell. On another occasion, when they were with father and mother called, father told them “the devil” was calling. N. testified that he no longer mentions his mother in father’s presence, because when he does, father tells him not to call her “Mom” because she is a sinner and that he should call father’s present wife “Mom” because she is “godly.” Following an investigation by the North Carolina Department of Social Services concerning father’s stepchildren, father and his present wife told N. he was a “spy and a master of espionage.” N. testified that he and his sister lived in fear of being punished by father and that father would threaten punishment without explaining what the punishment would be.
Mother testified that N. and H. did not want to visit father. On the days before scheduled visits, they feigned illness or professed to be tired, crying and begging not to go. She testified that they did not perform as well as usual in school immediately before and after visitation. Ordinarily both do *520 well academically. After mother unilaterally halted visitation in August, 2001, the children’s dispositions and attitudes improved noticeably. They ceased feigning illnesses and began looking forward to weekends. H., in particular, began doing better in school.
Mother reported that on one occasion when father spanked the children he said he did so because God had commanded it. Father and his present wife insisted the children call him their “godly father.” Father refused to discuss the children’s welfare with mother. In a March 2, 2001 agreed-upon order, father agreed to undergo counseling to improve his parenting skills, but had not done so at the time of the ore tenus hearing.
Denise McAllister testified that she is married to father’s present wife’s first husband, Michael McAllister. She testified that father told Michael McAllister’s children (who live with father and his present wife) that their father had deserted them, that he was not “righteous,” and that they were not supposed to live with “nonbelievers” such as the McAllisters. She testified that father further told the McAllister children that because their natural father was not righteous, he (father) was now their real father. When Michael McAllister confronted father regarding these statements, father accused him of having broken his covenant with God by leaving his family and asserted that as a result, father was “[the McAllister children’s] real daddy.” Father told the McAllister children that mother was a “wicked woman.”
Erin Long, a teacher at the elementary school N. had attended the previous year and where H. was enrolled at the time of the hearing, testified that both children are bright and are good students. She said she repeatedly noticed “a change in N’s personality” when he had to visit his father. Once, father came to her class to speak to N. and N. was visibly uncomfortable, similar to his demeanor on Mondays after visitation.
Dr. Leigh Hagan, a clinical psychologist, met with mother and the children. Hagan testified the children were “distressed” by father’s proselytizing and by his condemnation of *521 mother. Hagan explained that H. was particularly at risk of psychological damage due to father’s telling her that women should not strive to accomplish what men accomplish and that women should be subservient to men. He opined that the danger of psychological damage stems not only from father’s teaching these things to the children, but also from the punishments he meted out when they did not obey his teachings.
Father admitted he has told the children that he was disappointed in them and that they had insulted him. He acknowledged that he had accused N. of committing “spiritual adultery” by not reading the Bible when he was told to. He confirmed that he believed mother was living an “ungodly” life. He told the children that their mother had committed adultery and that adultery was ungodly, and that she was a fornicator and ungodly because her fiance lived with her and with the children prior to her marriage to the fiance.
The trial court held that “the only real question [before it] is whether Dr. Roberts’ conduct is such that continued visitation between him and the children is contrary to the children’s best interests.” It concluded that
[e]ven the most well adjusted child in the world ... would have serious problems trying to reconcile the divergent views put forward by Ms. Roberts and Dr. Roberts. When those divergent views are added to the upheaval already existing in these particular children’s lives, the children’s best interests are obviously not being served.
The trial court noted that the parties had previously agreed that the children would live with mother most of the time and that mother should have primary custody. “That being true,” the trial court continued, “Dr. Roberts’ telling them that the person he chose to be their primary caregiver is an adulterer and fornicator and will go to hell is unconscionable.” The trial court held that if father’s religion “required” him to say such things to his children, “it is outweighed by the court’s duty to protect the children’s best interests. If such duty is not required by his religion, his conduct is nothing more than a *522 blatant disregard for Ms children's best interests.” Either way, the court concluded, the situation could not continue. Accordingly, the trial court awarded mother sole legal and physical custody of the children, terminated father’s in-person visitation, and limited father’s contact with the children to scheduled, telephonic visits.

Support

Father sought a reduction in his child support obligation, asserting that his income in a new job he was taking was $333,000, $17,000 less than the $350,000 he had been earning previously.
However, the $3,000 a month child support father has been paying pursuant to a July 21, 1999 order was based on his then-salary of $180,000. That order was also based upon the agreement of the parties. The trial court determined father’s gmdeline support, based upon his new annual income and mother’s income, would be $2,221.47, but denied father’s request for a reduction in child support, holding that father had failed to demonstrate a material change in circumstances warranting a change.

ANALYSIS

I.
Father contends that in deciding to terminate his visitation, the trial court erred by “failing properly to take into account the presumption that parents act in the best interests of their children.” This issue is embraced in our analysis in Part IV and is resolved by that holding.
II.
Father next contends that the trial court failed to “properly take into account” his right to free exercise of religion and that the trial court’s decision violated his religious rights as guaranteed by the Umted States and Virgima Constitutions. Specifically, he contends that the trial court’s *523 decision infringed his “Free Exercise right to contribute to the religious instruction of his children.”
“The Free Exercise Clause of the United States Constitution, Article I, U.S. Const, amend. I [and] the Constitution of Virginia, Va. Const., art. I, § 16, ... prohibit state imposition of substantial burdens on the exercise of religion unless the state advances a compelling government interest which is furthered in the least restrictive manner.” Horen v. Commonwealth, 23 Va.App. 735, 742, 479 S.E.2d 553, 556-57 (1997). See also Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Freedom of religion is not absolute, and “[c]onduct remains subject to regulation for the protection of society.” Cantwell v. Connecticut, 310 U.S. 296, 303-04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).
Following the mandate of Code § 20-124.2(B), the trial court determined that continued visitation with father was contrary to the children’s best interests. That statute is religiously neutral, does not substantially burden the free exercise of religion, and rationally advances the legitimate state interest of protecting children. “[T]he protection of children from harm, whether moral, emotional, mental, or physical, is a valid and compelling state interest.” Knox v. Lynchburg Div. of Soc. Serv., 223 Va. 213, 223, 288 S.E.2d 399, 404 (1982). Furthermore, “[i]n any child custody decision [involving conflicting parental interests], the lodestar for the court is the best interest of the child,” Smith v. Pond, 5 Va.App. 161, 163, 360 S.E.2d 885, 886 (1987), and the “rights of the parents must be tempered by this guiding principle,” Haase v. Haase, 20 Va.App. 671, 681, 460 S.E.2d 585, 590 (1995).
The trial court specifically stated that it did not question the bona fides or validity of father’s religious beliefs. It did not challenge or limit his rights to hold or to promote those beliefs. It did not base its decision on father’s requirement that the children read the Bible, that they do chores, that they abstain from watching television, or that they be denied “free *524 time.” It based its decision exclusively on father’s bitter denunciation of mother to the children, his eschatological threats concerning mother and, on occasion, the children, and his active undermining the ability of mother and the children to maintain a proper and wholesome relationship.
The trial court’s decision addressed the visitation issue in the context of the compelling state interest in protecting the children’s welfare and their best interests and took into consideration the father’s parental and religious rights. Father remains free to instruct the children on his religious beliefs and to teach them as he sees fit. He is barred only from condemning and threatening mother and the children. The mere fact that his visitation has been limited to telephone contact does not prevent his sharing his religious beliefs. Nor is he hindered or otherwise prohibited from practicing his religious beliefs. Thus, the trial court’s ruling did not unconstitutionally infringe father’s free exercise rights.
The trial court’s order “terminated” father’s in-person visitation. However, a custody or visitation ruling is never final. It is always subject to review upon a showing of a material change of circumstances. Eichelberger v. Eichelberger, 2 Va.App. 409, 345 S.E.2d 10 (1986); Code § 20-124.2. The termination of father’s in-person visitation was a necessary and appropriate remedy for father’s conduct, which the trial court justifiably found “unconscionable.” Upon a satisfactory showing that this conduct has been curbed and will not recur, father may seek review of his visitation rights. We find the remedy imposed by the trial court under these circumstances to be appropriate to advance the compelling state interest in protecting the children in the least restrictive effective manner and to be consistent with father’s parental and free exercise rights.
III.
Father contends that Code § 20-124.2 “on its face and as applied by the circuit court in this case is unconstitutional.”
*525 This Court will not consider on appeal an argument that was not presented to the trial court. Ohree v. Commonwealth, 26 Va.App. 299, 308, 494 S.E.2d 484, 488 (1998); Rule 5A:18. The requirements of Rule 5A:18 apply equally to constitutional claims. Deal v. Commonwealth, 15 Va.App. 157, 161, 421 S.E.2d 897, 900 (1992). “A [party] who fails to challenge the constitutionality of a statute in the trial court is barred from raising that issue on appeal.” Parnell v. Commonwealth, 15 Va.App. 342, 349, 423 S.E.2d 834, 838 (1992). Father did not assert before the trial court that Code § 20-124.2 is unconstitutional. Accordingly, Rule 5A:18 bars our consideration of this question on appeal. The record reflects no reason to invoke the good cause or ends of justice exceptions to the operation of the rule.
IV.
Father next contends that the trial court erred in finding, based on the criteria set forth in Code § 20-124.2, that continued visitation with him was not in the children’s best interests.
In determining custody, the court shall give primary consideration to the best interests of the child. The court shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children. As between the parents, there shall be no presumption or inference of law in favor of either. The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest. The court may award joint custody or sole custody.
Code § 20-124.2(B).
In custody determinations, “the controlling consideration is always the child’s welfare____” Sutherland v. Sutherland, 14 Va.App. 42, 43, 414 S.E.2d 617, 618 (1992). In determining *526 what custodial arrangement serves the best interests of a child, the court shall consider the factors enumerated in Code § 20-124.3. These factors include “[t]he relationship existing between each parent and each child, giving due consideration to the positive involvement with the child’s life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child;” the needs of the child; the role that each parent plays in the upbringing and care of the child; “[t]he propensity of each parent to actively support the child’s contact and relationship with the other parent;” “the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child;” and “[t]he reasonable preference of the child____” Code § 20-124.3.
A trial court is not required to quantify or elaborate on what weight or consideration it has given to each of the factors in Code § 20-124.3 or to weigh each factor equally. See Sargent v. Sargent, 20 Va.App. 694, 702, 460 S.E.2d 596, 599 (1995). It is vested with broad discretion to safeguard and promote the child’s interests, and its decision will not be reversed unless plainly wrong or without evidence to support it. See Farley v. Farley, 9 Va.App. 326, 327-28, 387 S.E.2d 794, 795 (1990).
The record demonstrates that the trial court carefully weighed the evidence and considered the factors set forth in Code § 20-124.3, as required by Code § 20-124.2. Its decision properly focused on the best interests and welfare of the children.
The evidence supports the trial court’s finding that father’s conduct was causing serious psychological and emotional injury to the children. They feigned illness to avoid visiting him. N. was visibly uncomfortable in his presence. H’s school performance improved when the visits ceased. Not only did father not support the children’s relationship with their mother, he actively attempted to undermine that relationship through his repeated condemnation of her. He accused mother, in the children’s presence, of being an adulterer and fornicator and told the children that she was going to go to *527 hell. He referred to mother as the devil when she called the children at his house. He threatened the children with damnation. He and his present wife accused N. of being a “spy.”
Determination of visitation rights is a matter of judicial discretion. Eichelberger, 2 Va.App. at 412, 345 S.E.2d at 11. We will not set aside a trial court’s visitation decision unless that decision is plainly wrong or without evidence to support it. Farley, 9 Va.App. at 328, 387 S.E.2d at 795. The record supports the trial court’s determination that continued in-person visitation with father is contrary to the children’s best interests. That determination reflects a sound exercise of judicial discretion.
V.
As his fifth question presented, father asserts the trial court
denied [him] due process of law in the conduct of the hearing (a) by refusing to permit [him] to voir dire and conduct inquiry into the reliability of the scientific methods used by [mother’s] purported expert witness and by restricting [his] cross-examination of said expert, (b) by failing to exclude, and relying upon, impermissible hearsay evidence, (c) by relying on evidence not presented in the hearing without notice and without affording [him] an opportunity to rebut such evidence, and (d) by minimizing the harm from the children’s exposure to [mother’s] ongoing adultery.
“ ‘Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.’ ” Ryan’s Family Steak Houses v. Gowan, 32 Va.App. 459, 464, 528 S.E.2d 720, 723 (2000) (citation omitted). “Since this argument was not fully developed in the appellant’s brief, we need not address this question.” Buchanan v. Buchanan, 14 Va.App. 53, 56, 415 S.E.2d 237, 239 (1992). Having presented no argument in his brief, father has waived this issue. See Littlejohn v. Commonwealth, 24 Va.App. 401, 409, 482 S.E.2d 853, 857 (1997); Rule 5A:20(e).
*528 VI.
Father finally contends that the trial court erred by “failing to apply the child support guidelines and/or to adequately specify its basis for failing to do so, and in failing to reduce [his] child support obligation to comply with the guidelines.” He argues that the trial court erred by failing to order the presumptive amount determined by the guidelines set forth in Code § 20-108.2.
“In a petition for modification of child support and spousal support, the burden is on the moving party to prove [by a preponderance of the evidence] a material change in circumstances that warrants modification of support.” Richardson v. Richardson, 30 Va.App. 341, 347, 516 S.E.2d 726, 729 (1999) (citation omitted). The petitioner must demonstrate a material change in circumstances from the most recent support award. See Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991) (“following entry of a final decree ... a party seeking a change in court-ordered ... support” must prove a material change). “In the absence of a material change in circumstances, reconsideration of support ... [is] barred by principles of res judicata.” Hiner v. Hadeed, 15 Va.App. 575, 580, 425 S.E.2d 811, 814 (1993).
Father argued that the change in his salary from $350,000 to $333,000 represented a material change in circumstances. This change amounted to a decrease of only five percent. More important, however, the previous support order from which father was required to show a change in circumstances was based upon his then-salary of $180,000. Thus, the only change in circumstances demonstrated by the evidence is a salary increase of $153,000. Furthermore, the earlier order was entered by joint consent of the parties. This record supports the trial court’s determination that father failed to demonstrate a material change in circumstances warranting modification of support. Thus, the trial court was not required to apply the guidelines.
*529 VIL
Wife’s motion for an award of attorney’s fees is denied. The parties shall bear their respective costs.
We affirm the judgment of the trial court.

Affirmed.