COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Judges Bumgardner and Frank


EDWARD ALLEN FAINES
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0145-04-3                      JUDGE ROBERT P. FRANK
                                                    JANUARY 11, 2005
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                            James V. Lane, Judge

            (Sherwin J. Jacobs, on brief), for appellant.  Appellant submitting
            on brief.

            (Jerry W. Kilgore, Attorney General; Josephine F. Whalen,
            Assistant Attorney General, on brief), for appellee.  Appellee
            submitting on brief.


        Edward Allen Faines, appellant, was convicted, in a bench trial, of possession of cocaine

in violation of Code § 18.2-250, possession of heroin in violation of Code § 18.2-250 and

possession of cocaine with the intent to distribute in violation of Code § 18.2-248.  On appeal, he

contends the trial court erred in not suppressing the drugs because the police entered his

residence without a search warrant or arrest warrant.  Finding that the police created the "exigent

circumstances" prior to their entry, we reverse appellant's convictions.

                                    BACKGROUND

        The facts are not in dispute.  In April of 2003, Investigator Katie Jackson of the Virginia

State Police, along with the RUSH Drug Task Force, was investigating appellant for the

distribution of narcotics.  On April 9, 2003, Jackson received information from a reliable,

confidential informant that appellant had approximately 30 bags of crack cocaine, each worth

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

about $50, in his Harrisonburg apartment. Later that same day, the confidential informant made a controlled purchase of crack cocaine from appellant at his apartment. At that time, appellant only had about one half ounce of crack remaining.

On Friday, April 11, 2003, at about 3:30 in the afternoon, the confidential informant made a second controlled purchase from appellant at appellant's apartment. After this purchase, the confidential informant told Jackson that appellant had no more drugs. The confidential informant also advised Jackson that appellant would be resupplied and that he would be going out of town for the weekend, apparently to attend a funeral. Jackson assumed he would return the following Monday. Jackson testified she believed appellant would not be gone permanently. The officer had no information there were weapons on the premises.

Jackson decided to have her informant make one more controlled purchase. She did not obtain an arrest warrant at that time because she wanted to secure a third buy, and according to her informant, appellant did not have any more drugs. She determined that a warrant at that time would probably not yield any evidence of appellant's drug trafficking.

Believing appellant would not begin selling drugs again until after he returned from the funeral, Jackson planned to wait until Sunday to begin surveillance and have her informant make the third controlled purchase. However, she received a call from the confidential informant at about midnight on the morning of Saturday, April 12, 2003, just hours after learning appellant did not have any more drugs, alerting her that appellant was resupplied and currently selling drugs from his residence.

Based on this information, and believing appellant would be leaving town shortly, Jackson assembled a team to go to appellant's home to "try and secure the area so no more crack cocaine would get out there." She further explained, "I went to the residence to attempt to stop the distribution of the crack cocaine back into the community." Jackson did not first obtain a

search warrant because to do so would take at least two hours and could even take "a few hours before they get to you." However, Jackson did not call the magistrate's office to determine the time frame to obtain the search warrant.

Jackson and three other investigators went to appellant's apartment building. Jackson and Investigator Martin approached the door. When Jackson knocked, a male voice asked who was at the door. Jackson asked if "Allen was there." Allen is appellant's middle name. The man again asked who was at the door. Jackson responded by asking for "Allen" a second time and received the same response. When the man asked for the third time who was at the door, Jackson identified herself as a police officer and held her badge to the door's peephole. She then heard the sound of "footsteps running away from the door."

Jackson, concerned about the possible destruction of evidence, decided to enter the apartment. Finding the door locked, she asked Investigator Martin to kick the door open.

Martin kicked the door open and discovered appellant going into the bathroom located at the back of the apartment. Martin found appellant in the process of flushing several plastic baggies of crack cocaine down the toilet. The officers restrained appellant and made a protective sweep of the apartment. The officers gathered the three remaining occupants into the living room. While securing the apartment, the officers saw drugs scattered on various surfaces throughout the rooms. After securing the apartment, Jackson read appellant his Miranda rights. Appellant agreed to waive his rights and speak with Jackson. He further consented to a search of the apartment.

While indicating she had no information that the apartment contained weapons, Jackson characterized the apartment as a "crack house." She also testified that until she identified herself as a police officer, she had no reason to believe appellant was aware of police presence or involvement.

Appellant filed a motion to suppress the evidence found in his apartment based on the officer's failure to obtain a search warrant. He argued below, as he does now, that if any exigent circumstances existed, they were precipitated by the police. The trial court conducted a suppression hearing on September 19, 2003. The trial court denied appellant's motion to suppress in an opinion letter dated October 2, 2003.

The trial court opined that the police did not create the exigency. The court reasoned that

> there is no evidence in this case that the police deliberately went to [appellant's] home in order to manufacture exigent circumstances. . . . The Commonwealth presented evidence showing that the [appellant] was able and reasonably likely to sell all of his drugs in the extended amount time [sic] it would take the police to obtain a warrant on a Saturday night.

## ANALYSIS

Appellant contends that the police illegally entered his apartment without a search warrant and the "exigent circumstance" exception to a warrantless entry does not apply because the police themselves created the exigency.[1] Appellant further argues the police, instead of approaching the door and identifying themselves as police, should have obtained a search warrant before entering the apartment. The Commonwealth responds by asserting "exigent circumstances" existed because of the risk of the destruction of evidence.

On appeal of a denial of a motion to suppress, we consider the evidence presented below in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25

---

[1] Neither the appellant nor the Commonwealth argues that the officers lacked probable cause to believe contraband was on the premises.

- 4 -

Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996)).  However, we review *de novo* the trial court's application of defined legal standards to the particular facts of the case.  <u>Ornelas</u>, 517 U.S. at 699.

Warrantless entries into a residence are presumptively unreasonable.  <u>Payton v. New York</u>, 445 U.S. 573, 586 (1980).  Nevertheless, an exception to the warrant requirement is made when certain exigent circumstances exist.  The trial court's finding of fact that exigent circumstances existed is binding upon this Court unless plainly wrong.  <u>McGee</u>, 25 Va. App. at 198, 487 S.E.2d at 261.  For example, where police officers (1) have probable cause to believe that evidence of illegal activity is present and (2) reasonably believe that evidence may be destroyed or removed before they could obtain a warrant, exigent circumstances justify a warrantless entry.  See <u>United States v. Turner</u>, 650 F.2d 526, 528 (4th Cir. 1981).  "Circumstances are not normally considered exigent where the suspects are unaware of police surveillance."  <u>United States v. Tobin</u>, 923 F.2d 1506, 1511 (11th Cir. 1991).

Other relevant circumstances which might justify a warrantless entry include, but are not limited to:  (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.  <u>Verez v. Commonwealth</u>, 230 Va. 405, 411, 337 S.E.2d 749, 753 (1985).

> [I]n determining whether exigent circumstances were sufficient to overcome the presumption of unreasonableness and justify a warrantless entry, the court must examine the circumstances as they reasonably appeared to the law enforcement officers on the scene. "The officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made."

Id. (citation omitted).

"[A] warrantless search may not be justified on the basis of exigent circumstances which are created by the government itself." United States v. Hultgren, 713 F.2d 79, 86 (5th Cir. 1983)). "It is true that police officers cannot deliberately create exigent circumstances to justify a warrantless entry into a private dwelling." United States v. Socey, 846 F.2d 1439, 1448 (D.C. Cir.), cert. denied, 488 U.S. 858 (1988). "Where agents create the exigency themselves, warrantless activity is per se unreasonable and we require suppression of any evidence obtained thereby." United States v. Webster, 750 F.2d 307, 328 (5th Cir. 1984) (citing United States v. Scheffer, 463 F.2d 567, 574 (5th Cir.), cert. denied, 409 U.S. 984 (1972)), cert. denied, 471 U.S. 1106 (1985). "Whereas exigent circumstances are the exception to the warrant requirement, a manufactured exigency is the exception to the exception." United States v. Howard, 106 F.3d 70, 78 (5th Cir. 1997).

The Commonwealth, citing Verez, argues on brief that urgency prevented the officers from having enough time to obtain a warrant. Further, the Commonwealth asserts that Investigator Jackson had a reasonable belief that the drugs would be destroyed before she could obtain a warrant. Essentially, the Commonwealth argues that the circumstances, as they appeared to the law enforcement officers on the scene, justified the warrantless entry.[2]

---

[2] The Commonwealth argues on brief that, in light of appellant's prior drug trafficking success, the drugs would be gone, through sale or use, within hours. The Commonwealth cites no authority that continued drug sales create an exigent circumstance. "Statements unsupported

Appellant contends that no exigency existed except the one created by the police in announcing their presence. He argues on brief that the facts of this case are indistinguishable from the facts in United States v. McCraw, 920 F.2d 224 (4th Cir. 1990).

In McCraw, an informant told the police that he, McCraw and a large man were about to be involved in a drug-related meeting at a particular motel and that money had already changed hands for a future drug delivery. The police saw McCraw and the informant in the vicinity of McCraw's apartment near the motel. They then watched the two suspects travel to the vicinity of the motel. Police saw a large man exit the motel. The same day, the hotel manager confirmed a large man named Mathis had registered in the motel. Hotel employees indicated a "noticeable disparity between the weight of Mathis' bags between check-in and check-out." Id. at 226.

A week later, McCraw told an undercover officer and the informer that he was expecting a shipment of drugs. McCraw sold the officer drugs. Two weeks later, police were advised Mathis re-registered at the motel. A surveillance officer saw McCraw leave Mathis' room with a suitcase and arrested him. The suitcase matched the description of the suitcase previously seen in Mathis' possession. The suitcase contained a quantity of cocaine.

Approximately one-half hour later, police knocked on the door without announcing themselves. Mathis opened the door, noticed the police and attempted to close the door. The police forced their way into the room and arrested Mathis. Police found drugs inside the room.

The district court in McCraw determined below that no exigent circumstances existed. The United States Court of Appeals for the Fourth Circuit affirmed, stating, in relevant part:

---

by argument, authority, or citations to the record do not merit appellate consideration." Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003) (citation omitted). Having presented no citations or authority in its brief in support of this argument, the Commonwealth has waived this argument on appeal and we need not address it. See Rule 5A:20(e). Further, there is no evidence to suggest a delay of several hours to obtain the search warrant would allow appellant to dispose of the drugs.

> In the present case, the trial court found that there were no exigent circumstances, and we agree. Mathis did not know of McCraw's arrest or of the officers' presence, and his room was under constant surveillance. He had no reason to destroy evidence, and if he came out of his room he could have been promptly apprehended in the hallway, a public place. Any risk of the destruction of evidence when Mathis retreated further into his room was precipitated by the agents' themselves when they knocked on the door.

Id. at 230.

The issue here, as in McCraw, is whether the actions of the police created the exigent circumstances that ultimately permitted them entry into the suspects' dwellings without warrants.

The instant case is also similar to United States v. Richard, 994 F.2d 244 (5th Cir. 1993). In that case, federal customs agents investigating drug smuggling arrested one suspect who told police that another suspect could be found at a motel. Agents proceeded to the motel and spoke with the motel clerks, confirming that two men were registered to the room and had made and received numerous telephone calls from the room. The agents knocked on the door and announced their presence. When they heard whispers, slamming drawers, and moving about from within, the agents kicked in the door. The United States Court of Appeals for the Fifth Circuit held that the district court did not clearly err in finding the agents deliberately created the exigency. Id. at 248. The court found that the exigent circumstances did not arise until the agents knocked on the door and announced themselves. Id. at 249. The court dismissed as pure speculation the government's argument that the occupants of the room would have suspected problems when their arrested cohort did not return, stating: "No evidence was offered at the suppression hearing to suggest that the room's occupants knew about [the] arrest, that they were aware they were being watched, or that they were destroying evidence." Id.

Other courts have expressed similar concerns about police-created exigencies and have held that a warrantless entry may not be justified based on exigent circumstances that are the result of police actions. See United States v. Aquino, 836 F.2d 1268, 1272 (10th Cir. 1988);

United States v. Rosselli, 506 F.2d 627 (7th Cir. 1974); People v. Foskey, 529 N.E.2d 1158 (Ill. App. Ct. 1988), aff'd, 554 N.E.2d 192 (Ill. 1990); State v. Hutchins, 561 A.2d 1142 (N.J. 1989).

It is helpful to review a Fourth Circuit Court of Appeals case to analyze the basis of finding that the police did not create the exigency. In United States v. Grissett, 925 F.2d 776 (4th Cir. 1991), police received a call from a motel indicating an armed man was in the lobby. When the police arrived at the motel, they asked the armed man if he had any identification. He had none, but responded an individual in Room 523 could identify him. Police knocked on the door to Room 523 and identified themselves as police. Grissett responded and stepped into the hallway, leaving the door partially open. As the police questioned Grissett, they smelled marijuana eminating from the room. The police entered the room. The Fourth Circuit found exigent circumstances for the warrantless entry and concluded:

> In addition, we cannot accept appellants' claim that the exigent circumstances were somehow of the officers' own making. Massey directed the officers to room 523 to establish his identity, but they were unaware that drugs were located in the room until they smelled the odor of marijuana. Thus, the officers could not have known in advance that their conduct would precipitate an emergency involving the probable destruction of evidence.

Id. at 778.

In McCraw, Richard, and the instant case, the police were aware that drugs were being sold on the premises. Having that information, the police knocked and announced themselves. In each case, exigent circumstances did not occur until after the announcement. In Grissett, the police had no prior information of any drug involvement but were investigating a non-drug related offense. Only after Grissett stepped outside the room did the police smell marijuana.

The Commonwealth relies upon our decision in Weathers v. Commonwealth, 32 Va. App. 652, 529 S.E.2d 847 (2000), to support the trial court's finding that a warrantless entry is permissible when police have both probable cause and evidence of the suspect's attempt to

destroy evidence before entering the residence. While the facts of <u>Weathers</u> are similar to the facts presented in this appeal, the <u>Weathers</u> Court addressed, in part, the question of whether the officers reasonably perceived exigent circumstances warranting immediate entry into a motel room. This Court found no error in the trial court's holding that the police did not need to obtain a search warrant before entering the room under the circumstances of that case. The issue of police creating their own exigent circumstance by knocking and announcing their presence was not an issue in <u>Weathers</u> nor was it a component of the decision. To that extent, the holding in <u>Weathers</u> is not germane to the issue presented here.

Guided by these principles, our first concern in analyzing a claim of manufactured exigency is whether officers could have obtained a search warrant prior to the development of the exigent circumstances upon which they relied. <u>Webster</u>, 750 F.2d at 327. Then, in evaluating a claim of manufactured exigency we must distinguish between cases where exigent circumstances arise naturally during a delay in obtaining a warrant and those where officers have deliberately created the exigent circumstances. <u>Id.</u>

The police here believed the occupants of the apartment to be in possession of easily disposable illegal drugs. Despite a clear showing of probable cause, the detectives did not attempt to obtain a warrant. Prior to approaching appellant's residence, they had no reason to believe appellant knew of the police presence. The police had no information appellant was armed or that the drugs would otherwise be disposed of. Police admitted, while appellant was going out of town for a funeral, they had no reason to believe he would not return. They came to the property to secure it and to stop drug sales. It can be concluded they knocked on the door, asking for "Allen" to accomplish their purpose of stopping the drug sales. They did not attempt to secure the area. When pressed to identify themselves, they answered they were the police. The exigent circumstances ensued thereafter.

By announcing themselves, the officers alerted the suspects to their presence, causing the attempted destruction of the drugs. The police may not rely on the circumstances of their own making to support the proposition that the warrant requirement should be excused.

Thus, we conclude that the police knew in advance that their conduct would precipitate an emergency situation. Under the facts of this case, we find that no exigency existed until the police knocked on the door and announced their presence. We conclude, as a matter of law, that the police created their own exigency.

## CONCLUSION

Despite the existence of probable cause to search the apartment, no exigent circumstances existed to justify a warrantless entry. We conclude that the police, prior to announcing their presence, had no reasonable basis to believe that the drugs were in danger of being destroyed. The police themselves precipitated any risk of destruction of evidence when they knocked on the door. Accordingly, we reverse and remand for further proceedings if the Commonwealth be so advised.

Reversed and remanded.