UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Humphreys and Kelsey
Argued at Alexandria, Virginia

MURRAY A. SEWELL

                                                        MEMORANDUM OPINION[*] BY
v.     Record No. 2053-12-4                    JUDGE D. ARTHUR KELSEY
                                                        JULY 30, 2013

WENDY S. SEWELL


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                Robert J. Smith, Judge

            Jeff Evan Lowinger (Joseph O. Hankins; New & Lowinger,
            P.C., on brief), for appellant.

            Brian D. West (The West Law Group, P.C., on brief), for
            appellee.


        Murray A. Sewell petitioned the trial court to reduce his spousal support obligation to his

former wife, Wendy S. Sewell.  The trial court concluded that changed circumstances did not

warrant the reduction and denied the petition.  Finding no abuse of discretion, we affirm.


                                                    I.

        On appeal, "we view the evidence in the light most favorable to the prevailing party,

granting it the benefit of any reasonable inferences." White v. White, 56 Va. App. 214, 216, 692

S.E.2d 289, 290 (2010) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833,

835 (2003)).  "That principle requires us to discard the evidence of the appellant which conflicts,

either directly or inferentially, with the evidence presented by the appellee at trial." Hamad v.

Hamad, 61 Va. App. 593, 596, 739 S.E.2d 232, 234 (2013) (quoting Owens v. Owens, 41

Va. App. 844, 848-49, 589 S.E.2d 488, 491 (2003)).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Murray Sewell, appellant, and Wendy Sewell, appellee, divorced in 2007 after twenty-seven years of marriage. At that time, appellant agreed to pay his former wife $9,000 a month in spousal support.[1] Four years later, appellant filed a petition seeking a reduction in his support obligation. He pointed out that the divorce decree incorporated the parties' agreement, which made clear the spousal support "award may be increased or decreased by the court upon proper motion due to a material change in circumstances . . . meaning a court of competent jurisdiction can increase, decrease, or terminate this obligation upon a proper showing." App. at 4. In support of his petition, appellant claimed his income had steadily fallen since 2007.

In 2007, appellant worked for Electronic Data Systems, LLC (EDS). His income varied from year to year and was comprised of a base salary, bonuses, commissions, and stock options. Before settling on a spousal support amount, appellant stated in sworn discovery answers that his estimated 2006 EDS income was "$348,000." Id. at 393. In a footnote, appellant explained his estimate included a "salary of $180,000 plus commissions and bonuses averaged over a three year period." Id. Thus, working with half of 2006 calendar year's data, coupled with a three-year history of compensation, appellant estimated that his commission and bonus income for 2006 would be $168,000.

As it turns out, appellant's estimate was off by more than $150,000. By the end of 2006, his actual earnings from EDS were more than $500,000. Id. at 324. "So there was a rather stark difference," he later conceded, between his "projected" and actual earnings that year. Id. at 86. At any rate, the parties were still negotiating a settlement when appellant became aware of the true figure. Despite this, he never supplemented his interrogatory answers — as required by Rule 4:1(e) — to include the updated income information. In February 2007, unaware of

---

[1] The payments were "tax deductible to the Husband and taxable to the Wife." App. at 4. See generally Wickham v. Wickham, 215 Va. 694, 695 n.2, 213 S.E.2d 750, 751 n.2 (1975); Parrillo v. Parrillo, 1 Va. App. 226, 228 n.2, 336 S.E.2d 23, 24 n.2 (1985).

appellant's true 2006 income, appellee relied on his earlier, inaccurate figure as part of a three-year baseline income average to arrive at the agreed-upon $9,000 monthly support award. Id. at 143-46, 157, 159. The trial court entered the divorce decree in March 2007 and incorporated the support portion of the settlement agreement.[2]

Appellant's income fluctuated over the next several years. His annual income was approximately $526,000 in 2007, $463,000 in 2008, and $419,000 in 2009. Id. at 308, 486, 325, 572.[3] He voluntarily left EDS in 2010, apparently dissatisfied with the direction the business had taken since being acquired in 2008 by Hewlett-Packard Co., and started a new job with Harris IT Services Corp. In his petition, appellant alleged that a "tumultuous work environment" and the "threat of losing his job" were factors influencing his decision to quit Hewlett-Packard Co. See id. at 10 (Pet. for Mod. of Spousal Supp. ¶ 6). At the evidentiary hearing, however, he produced no corroboration for these assertions.

In his new job as Vice President of Business Development, appellant was promised $215,000 in base salary, as well as stock options and $200,000 in bonuses if he met his performance targets. Id. at 59. He understood, however, that "there was a risk involved" in changing jobs. Id. at 92. In 2010, while consecutively employed at both jobs, appellant earned $528,094. Id. at 62, 350. During 2011, appellant's first full year at Harris IT Services Corp., his annual income dropped to $347,000. Id. at 64. At the time of his hearing in October 2012, he projected he would earn his base salary of $217,000. Though he was "optimistic" that he would

---

[2] That same month, appellant purchased a Mercedes SL550 at an acquisition cost of $105,000. Id. at 100, 313. Before the hearing on his petition to modify spousal support, appellant sold the Mercedes and bought a Nissan. Id. at 100.

[3] The record discloses several sets of slightly dissimilar income figures for these years. Because we view the evidence in the light most favorable to appellee, the prevailing party in the trial court, we use the higher set of income figures.

also receive a $200,000 bonus in the company's 2012-13 fiscal year, id. at 89, appellant did not include that figure in his estimated 2012 income.

Appellee, on the other hand, did not graduate from high school or college, but earned a GED as a teenager. During their twenty-seven years of marriage, appellant was the primary wage earner for the family. Appellee stayed home to care for their children while they were young. Now fifty-seven, appellee suffers from Hashimoto's disease and a brain lesion. She works as a "patient care tech" at a local hospital during the 7:00 p.m. to 7:00 a.m. night shift. Id. at 139-40. Her salary is approximately $30,000 per year. Appellee testified that "if there was a significant reduction in the alimony . . . [she] will have to get rid of [her] house, [she] will have to get out of it somehow." Id. at 147.

During closing arguments, counsel addressed at length the methodology used by the parties to determine the $9,000 support amount in the settlement agreement. Appellant's counsel argued, "First of all, to be clear, when Mr. Sewell proposed a three-year average [of his income], he was employed by EDS, and he had been there a long time" and, "because of the unevenness of that employment, it seemed a good way to project his bonus going forward at EDS." Id. at 578. Counsel conceded appellant's July 2006 income estimation of $348,000 turned out to be rather low, given that appellant's actual income exceeded $500,000, but argued appellee had not relied on the inaccurate estimate. Appellant's counsel explained, "the number was a negotiated number having nothing to do with his income," id. at 128, but was instead driven by appellee's "needs, because at a certain point you reach an income level that is so high, it really doesn't matter what you're earning; it's what are her reasonable needs," id. at 586.

In any event, appellant's counsel argued, it would be imprudent at that point for the trial court to use a three-year income averaging method to determine whether changed circumstances warranted a reduction in support. His ability to pay should be the deciding factor. The trial court

rejected these arguments and found appellant had not shown a material change in circumstances warranting a reduction in spousal support.

## II.

On appeal, appellant argues the trial court abused its discretion by refusing to reduce his spousal support obligations. He claims the court improperly considered appellant's post-divorce income on a three-year rolling basis as a way of estimating his current income. Appellant also disagrees with the court's consideration of his voluntary resignation in 2010 from EDS to accept a lower paying job at Harris IT Services Corp.[4]

## A.

A spousal support award, like any other final order of the circuit court, remains subject to Rule 1:1, regardless of whether the award is consensual or contested. Under *res judicata* principles, an unappealed support order can be modified only upon a showing of changed circumstances. See Roberts v. Roberts, 41 Va. App. 513, 528, 586 S.E.2d 290, 297 (2003); Barton v. Barton, 31 Va. App. 175, 177-78, 522 S.E.2d 373, 374-75 (1999). Such a showing of changed circumstances permits — but does not require — the trial court to exercise its discretion to modify the support award. "Aside from having to prove a material change in circumstances, husband had to prove that this change *warranted* a support modification." Broadhead v.

---

[4] The parties also dispute whether the settlement agreement provided for spousal support for a defined or undefined duration, suggesting the test for modification may include a higher foreseeability element in the former, but not the latter, context. Compare Dailey v. Dailey, 59 Va. App. 734, 741, 722 S.E.2d 321, 324 (2012) (noting the "foreseeability requirement finds its roots in Code § 20-109(B)"), with Furr v. Furr, 13 Va. App. 479, 482, 413 S.E.2d 72, 74 (1992) (decided before current subsection B was added, noting nonetheless that "[w]hat is 'reasonably foreseeable' depends on the circumstances of the particular case"). We need not resolve the defined-vs-undefined duration dispute because our holding, if not our reasoning, would be the same in either context.

Broadhead, 51 Va. App. 170, 180, 655 S.E.2d 748, 752 (2008) (emphasis added and citation omitted); see also Blackburn v. Michael, 30 Va. App. 95, 103, 515 S.E.2d 780, 784 (1999).

The burden of proof remains at all times on the party seeking to modify the award to demonstrate by a preponderance of the evidence the justification for the requested modification. It involves not merely a showing of a change in circumstances, but proof that the equities of the case demonstrate that "this change *warrants* a modification of support." Dailey v. Dailey, 59 Va. App. 734, 742-43, 722 S.E.2d 321, 326 (2012) (citation omitted and emphasis added); Street v. Street, 25 Va. App. 380, 386, 488 S.E.2d 665, 668 (1997) (*en banc*) (citation omitted); Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 795 (1997) (citation omitted); Reece v. Reece, 22 Va. App. 368, 372-73, 470 S.E.2d 148, 151 (1996).

In addition, when a payor ex-spouse seeks a modification, he "must also show that his lack of ability to pay is not due to his own voluntary act or because of his neglect." Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261 (1986) (citation omitted). To prove a change in circumstances justifying a reduction in support, the payor ex-spouse "must establish that he is not 'voluntarily unemployed or voluntarily under employed.'" Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991) (quoting Code § 20-108.1(B)(3)); see also Va. Dep't of Soc. Servs. v. Ewing, 22 Va. App. 466, 470, 470 S.E.2d 608, 610 (1996). The issue is not simply the reasonableness of the payor ex-spouse's risk assessment, but whether he or his ex-spouse should bear the financial burden of it failing to come to pass as he predicted. See generally Antonelli, 242 Va. at 156, 409 S.E.2d at 119; Stubblebine v. Stubblebine, 22 Va. App. 703, 708, 473 S.E.2d 72, 74 (1996) (*en banc*); Auman v. Auman, 21 Va. App. 275, 279, 464 S.E.2d 154, 156 (1995) (holding "a party is not free to make career decisions that disregard the needs of his dependents and his potential obligation to them").

Overarching all of these principles is an essential equitable premise. No formula or slide rule can determine whether a set of changed circumstances are truly material, thus warranting a modification of an earlier support award. That determination involves an exercise in conscientious judgment of a chancellor in equity. It is for this reason that we do not review such judgments *de novo.* Applying one of the most deferential of standards, we ask only whether the trial judge abused his discretion. As we recently explained in a related context:

> An abuse of discretion occurs only when "reasonable jurists" could not disagree as to the proper decision. This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable. This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.

Hamad, 61 Va. App. at 607, 739 S.E.2d at 239 (quoting Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008)).

B.

Given the evidence and the equities of this case, the trial court did not abuse its discretion by rejecting appellant's petition to reduce the spousal support award.

In its attempt to determine appellant's present earning capacity, the court correctly focused on the fluctuating nature of his income. Taking into account his three-year income average — consistent with appellant's own proposal at the time the parties agreed upon the initial amount of support[5] — was a realistic method of assessing appellant's earnings.

---

[5] Appellant's counsel confirmed this point during closing argument in the trial court when he argued, "to be clear, when Mr. Sewell proposed a three-year average" of his income "it seemed a good way to project his bonus going forward at EDS." App. at 578. Accord Gress v. Gress, 743 N.W.2d 67, 75 (Neb. 2007) (collecting cases using a three-year income average, including In re Marriage of Garrett, 785 N.E.2d 172, 178 (Ill. Ct. App. 2003); Roberts v. Roberts, 924 So. 2d 550, 553 (Miss. Ct. App. 2005); Fleenor v. Fleenor, 992 P.2d 1065, 1070-71

- 7 -

Appellant's base salary was, and continues to be, far lower than his expected earnings. And his bonuses and stock options vary from year to year, and job to job, depending both on his performance and the company's evolving compensation package. As the trial court understood, freeze-framing a single year (as appellant claims the trial court should have done with his projected 2012 income) provided a less reliable estimate of his earnings than looking at a moving reel of the last several years of earnings.

Appellant claims that considering a three-year earnings average violated the settlement agreement because it did not specifically address this issue. The settlement agreement, however, merely authorized the trial court to modify the award upon a showing of "a material change in circumstances" warranting the modification. App. at 4. Nothing in the agreement purported to limit the trial court's discretion to determine whether, and to what extent, a modification was warranted. By its silence on the issue, the agreement essentially "granted the trial court the authority, without specified limitation, to modify spousal support." Blackburn, 30 Va. App. at 100, 515 S.E.2d at 783.

We similarly find no abuse of discretion in the trial court's observation that appellant voluntarily left EDS in 2010 for a lower paying job at Harris IT Services Corp. He offered no support for his initial claim that a "tumultuous work environment" and the "threat of losing his job" influenced his decision to resign from Hewlett-Packard Co. App. at 10 (Pet. for Mod. of Spousal Supp. ¶ 6). And his explanations at the hearing were both vague and conjectural. He offered personal, wholly uncorroborated opinions on the post-acquisition nature of EDS and the impact of the new business model on his future income. Nor did he present any persuasive

---

(Wyo. 1999), and noting "it appears that both here and elsewhere, a 3-year average tends to be the most common approach in cases where . . . income tends to fluctuate").

evidence proving that his income would have either plateaued at a lower figure or continued to decline if he had remained at EDS.

The trial court was understandably unpersuaded. Appellant, not appellee, bore the burden of persuading the court on this issue. See Antonelli, 242 Va. at 155-56, 409 S.E.2d at 119 (affirming the trial court because Antonelli "failed to prove" he had not "gambled with the children's ability to receive his financial support, and lost"); Kaplan v. Kaplan, 21 Va. App. 542, 551, 466 S.E.2d 111, 115 (1996) (affirming the trial court and holding Antonelli did not "bar" a reduction where the father proved he had "suffered an involuntary reduction in his annual income" despite his decision to "renegotiate" his employment arrangement).

For similar reasons, the court was rightly skeptical of appellant's 2012 income estimate. It conspicuously included only his base salary without any adjustment for additional income enhancements for the second half of the calendar year. When pressed during cross-examination, appellant testified he was "optimistic" he would receive a $200,000 bonus at the end of the company's 2012-13 fiscal year, App. at 89, yet he remained pessimistic regarding the inclusion of the bonus income in the spousal award equation.

The 2012 projection was reminiscent of appellant's earlier discovery response at the time of the divorce proceeding, in which he understated his projected 2006 income by more than $150,000 and failed to supplement his responses even after he obtained the final figure. In short, in both 2006 and 2012, appellant bore the burden of making "a full and clear disclosure relating to his ability to pay." Edwards, 232 Va. at 112, 348 S.E.2d at 261. As finder of fact, the trial court was not plainly wrong in concluding appellant fell short of shouldering this burden.

Finally, appellant complains that the trial court's ruling has the effect of forever precluding him from later seeking a modification based *even in part* upon the income decline he

- 9 -

experienced from 2007 to 2012. We find these fears exaggerated. It is true the trial court's holding affirmed by us establishes, for *res judicata* purposes, that the evidence presented in this case failed to show a material change in circumstances warranting a reduction in spousal support. But it is also true that a later petition could allege, and possibly prove, that appellant's trajectory of income continued to deteriorate to the point where the trial court, in its discretion, might conclude a modification is warranted. It might also be shown that what today may appear to be a temporary income deterioration has in the future become permanent, thus providing the trial court with new circumstances authorizing a reexamination of the 2007 support award. Neither the trial court's holding nor our affirmance forecloses these possibilities.[6]

III.

Taken together, the evidence and the equities of this case demonstrate a conscientious exercise of discretion by the trial court in denying appellant's petition to reduce spousal support. We therefore affirm.

<u>Affirmed.</u>

---

[6] Along these lines, it is also important to note that we do not address each of the trial court's alternative bases for its ruling. <u>See</u> <u>generally</u> Restatement (Second) of Judgments § 27 cmt. o (1980); <u>Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians</u>, 94 F.3d 747, 754 (2d Cir. 1996) ("[I]f an appellate court considers only one of a lower court's alternative bases for its holding, . . . only the basis that is actually considered can have any preclusive effect in subsequent litigation.").